FILED

5:00 pm, 6/3/20

**Margaret Botkins
Clerk of Court**

Jeremy J. Hugus, #7-4630
PLATTE RIVER INJURY LAW
259 S. Center Street, #308
Casper, Wyoming 82601
P: (307) 215-9724
F: (844) 416-9337
E: hugus@platteriverlaw.com

Andrew W. Stavros (Utah Bar # 8615)
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
Email: andy@stavroslaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

| | |
|---|---|
| JASON BLACKBURN, an individual, | **COMPLAINT** |
| Plaintiff, | **(JURY DEMAND)** |
| vs. | Case No: 20-CV-95-F |
| SCHLUMBERGER TECHNOLOGY CORPORATION, a Texas corporation, | Judge: |
| Defendant. | |

Plaintiff Jason Blackburn ("Plaintiff" or "Blackburn"), by and through his counsel, brings this complaint against Schlumberger Technology Corporation ("Defendant" or "Schlumberger"), and for causes of action alleges as follows:

1

## INTRODUCTION

This is an employment sexual harassment and discrimination action brought pursuant to WYO. STAT. §§ 27-9-101 through 105, inclusive; 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 et seq.; and all applicable Federal and Wyoming case law.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jason Blackburn ("Blackburn") is an individual who, at all times relevant to this complaint, resided in Washington County, State of Utah. As alleged herein, Blackburn was an employee of Defendant within the meaning of U.S.C. § 2000e(f) and worked in the State of Wyoming and State of Utah as an employee of Defendant.

2. Schlumberger Technology Corporation is a Texas corporation ("Schlumberger") that does business throughout the United States and is a subsidiary of Schlumberger N.V., a publicly traded corporation incorporated in Caracao, operating in the United States as Schlumberger Limited.

3. At all times relevant to this complaint, Schlumberger was an employer within the meaning of U.S.C. § 2000e(b).

4. Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1343(4). This Court also has pendant jurisdiction over questions of Wyoming State law pursuant to 42 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

6. Blackburn filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on gender and related claims on or about March 18, 2019, and received a notice of right to sue from the EEOC dated March 5, 2020, on March 9, 2020 which is attached hereto as Exhibit 1.

## FACTUAL BACKGROUND

7. Blackburn was hired by Schlumberger to work as an Operator Trainee on or about July 27, 2008.

2

8. Throughout his employment Blackburn regularly received pay increases and had no oral or written performance deficiencies.

9. By all accounts, Blackburn was an exceptional employee who met or exceed all of Schlumberger's expectations.

10. On or about October 16, 2017, Plaintiff travelled to Rock Springs, State of Wyoming, to work on a project for Schlumberger.

11. Immediately after arriving, Blackburn was subjected to sexual harassment, assault, battery and other reprehensible conduct of a sexual and offensive nature by Casey McConnell ("McConnell"), Level II Supervisor, for Schlumberger.

12. Thereafter, and on a regular basis, McConnell would touch Blackburn in appropriate ways, sexually harassment him, and humiliate him in front of management-level employees of Schlumberger. For example, McConnell would "grope" and touch Blackburn inappropriately. McConnell would also stick his tongue in Blackburn's ear, place his hands in Blackburn's pants, forcibly pin him down while forcing his fingers into Blackburn's mouth then rub his fingers all over Blackburn's face and poke Blackburn in the butthole through his coveralls and pants.

13. Each incident occurred in front of various other employees of Schlumberger, including management-level employees, all of whom did nothing to stop McConnell's behaviors.

14. Furthermore, after each incident Blackburn reported McConnell's actions and conduct to his superiors, including his direct Supervisor, Shan Nelson ("Nelson") and Justin Whitmore ("Whitmore").

15. During this time period, Blackburn worked on a rotating schedule that required him to work a week at a time with McConnell. Each time Blackburn was forced to work with McConnell, McConnell engaged in the above behaviors as well as make offensive comments, sexual innuendos, and banter that Blackburn objected to and that was otherwise unacceptable in any work environment.

3

16. On numerous occasions, management officials witnessed the behavior and instead of stopping McConnell, they would laugh at Blackburn, condone the conduct, and fail to intervene to stop McConnell.

17. Blackburn continued to complain after each incident, and nothing was done by Schlumberger to stop McConnell and to provide a safe work environment for Blackburn to work.

18. In or about January of 2018, Blackburn and members of his crew, including, Dustin Limb ("Limb"), Tim Hunter, Josh Young, Trenton Stander, Trevor Burr, arrived at their job site. Upon arriving, McConnell came up to their vehicle and began taunting Blackburn.

19. Fearing for his safety and afraid of being humiliated and harassed against, Blackburn immediately locked the doors to prevent being subjected to further harassment by McConnell.

20. McConnell then pleaded with Limb to unlock the door so that he could "mess" with Blackburn. Limb unlocked the door. McConnell opened the door and began groping Blackburn in an unwanted sexual manner in the presence of other employees. After the incident, Blackburn asked Limb why he unlocked the door for McConnell, to which he responded: "better you than me."

21. Blackburn later learned that a few weeks prior to this incident, Limb had also experienced similar treatment at the hands of McConnell. Namely, McConnell had duct taped Limb to a chair and proceeded to touch him in an unwanted sexual manner. McConnell had someone take pictures while McConnell battered and assaulted Limb.

22. After this incident, McConnell's behavior toward Blackburn continued and began to escalate to the point that every time Blackburn had to work a similar schedule, McConnell subjected him to the same kind of harassment – unwanted verbal and physical conduct of a sexual nature.

23. On or about October 28, 2018, Blackburn entered a control vehicle in order to relieve the night pump operator, Steve E. and Jacob Argumedo, another colleague, from their shift. Immediately after entering the control vehicle, McConnell began groping Blackburn in a highly

offensive and sexual manner. In order to prevent further unwanted touching, Blackburn sat down in a chair. McConnell then pinned Blackburn's hands down and continued rubbing his hand up and down Blackburn's body while forcibly trying to place his hands in Blackburn's mouth. Blackburn then attempted to forced McConnell off him by standing up but was unsuccessful. McConnell then grabbed Blackburn's hands and pinned them to his sides and proceeded to rub his crotch on Blackburn's leg and stick his tongue in Blackburn's ear.

24.  Blackburn's supervisors witnessed the event, including Nelson and Whitmore. Instead of protecting Blackburn his supervisors laughed and joked about McConnell's conduct, and told Blackburn to "just grab [McConnell] by the cock and he will stop."

25.  The following day, Blackburn once again entered the control vehicle in order to relieve Steve E., the pump operator from his shift. McConnell immediately proceeded to stick his hands into Blackburn's coveralls, pulled his pants down, and put his hand down the front of Blackburn's pants. Nelson and Whitmore once again witnessed the incident and did nothing to stop McConnell from assaulting, battering, and harassing Blackburn.

26.  On or about October 30, 2018, Blackburn again notified his supervisors, Nelson and Whitmore, of McConnell's behavior. After being dismissed, Blackburn asked to have someone take him back to the hotel he was staying in so that he would no longer be subjected to further harassment from McConnell.

27.  Devasted and utterly humiliated, and left with no hope that Schlumberger would stop McConnell and provide a safe working environment for Blackburn, Blackburn notified Nelson he could no longer work for Schlumberger.

28.  Blackburn then sent a text message to Nelson on October 31, 2018, stating that he could no longer subject himself to the unsafe environment and that he was resigning.

29. Throughout his employment, Blackburn was subjected to increasing unwelcomed conduct of a sexual nature by McConnell, Blackburn informed Schlumberger management level employees of the conduct repeatedly, and yet Schlumberger failed to provide a safe work environment and instead neglected the behaviors, which ultimately caused Blackburn to lose his job and benefits and suffer emotional distress.

30. Blackburn was constructively discharged from his employment because his working conditions were so difficult that a reasonable person in his position would have felt compelled to resign.

**FIRST CAUSE OF ACTION**
**(Violation of Title VII of the Civil Rights Act, 42 USC §§ 2000 et al. - Harassment)**

31. The preceding paragraphs are incorporated herein by reference.

32. Blackburn was subject to unwelcome and unwanted conduct because of his gender, as more fully set forth above.

33. The harassment was sufficiently severe and/or pervasive to alter the terms and conditions of his employment, creating a hostile work environment.

34. The hostile work environment was the result of Schlumberger's negligent hiring, training, supervision and retention of McConnell and his intentional conduct towards Blackburn which management-level employees knew of, or should have known of, and failed to stop.

35. Because McConnell was Plaintiff's supervisor, Schlumberger is liable pursuant to the doctrine of respondeat superior. Alternatively, Schlumberger is liable because of its own negligence in allowing the harassment of Blackburn that it knew of or should have known of and failing to stop the harassment.

36. As a direct and proximate result of Schlumberger's conduct, Blackburn suffered special and general damages, including damages for pain and suffering, humiliation and emotional

distress and other compensatory damages, and lost wages, benefits and other prerequisites of employment during his employment, in an amount to be proved at trial.

37. Schlumberger's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Blackburn's federally protected rights, entitling him to an award of punitive damages in an amount to be determined at trial.

38. Blackburn is also entitled to recover attorneys' fees and costs incurred in bringing this action, and such other relief as is available under law.

## SECOND CAUSE OF ACTION
### (Negligence)

39. The preceding paragraphs are incorporated herein by reference.

40. Defendant was an employer in accordance with WY Stat § 27-3-103 and 42 U.S. C. § 2000-e(b).

41. Defendant was aware or should have been aware of the fact that Blackburn was subjected to unlawful and unwarranted sexual harassment by his supervisor.

42. Defendant being Plaintiff's employer, owed Plaintiff the duty of care to ensure Plaintiff was protected from a hostile work environment or other unlawful acts, including that Plaintiff could work in a safe environment free from injury.

43. Defendant breached that duty of care by hiring an unqualified employee, failing to train the employee, and otherwise failing to supervise the employee's conduct and behavior.

44. Plaintiff was damaged by Defendant's negligence and suffered severe emotional distress due to Defendant's failure to create a safe work environment.

45. As such, Defendant is liable for special damages quantifiable to the emotional distress suffered while employed, inclusive of lost wages and any other damages incurred as a result of Defendant's negligence.

## THIRD CAUSE OF ACTION
### (Negligent Supervision)

46. The preceding paragraphs are incorporated herein by reference.

47. Defendant failed to take steps to ensure its employees obey company policies and otherwise neglected to supervise and properly train its employees so as to prevent unlawful conduct.

48. Defendant failed to act and prevent further behaviors from occurring after Plaintiff claimed he was being sexually harassed by a supervisor.

49. As such, Defendant permitted the employee to sexually harass Plaintiff and otherwise ignored violence and threats in the workplace, thus creating a hostile environment.

50. Defendant failed to properly supervise McConnell and permitted him to continue to subject Plaintiff to unlawful and unwanted sexual conduct and treatment.

51. Plaintiff suffered damages due to Defendant's inattention to McConnell's conduct, Defendant caused these damages knowingly and failed to prevent further conduct. Plaintiff was forced to work in a hostile environment created by Defendant's negligent supervision of McConnell.

52. Because of the incessant behaviors of McConnell, Defendant was aware of should have been aware of the conduct and any reasonable person in a similar capacity would have anticipated Plaintiff being damaged by McConnell's conduct.

53. Due to Defendant's failure to supervise, Plaintiff has suffered damages including lost wages, severe emotional harm, punitive damages, and such other relief as determined at trial.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

54. The preceding paragraphs are incorporated herein by reference.

55. McConnell engaged in outrageous and intolerable conduct by, including but not limited to, sexually harassing Plaintiff, subjecting him to reprehensible treatment and otherwise causing him severe emotional harm.

56. Defendant subjected Plaintiff continued emotional harm and conduct that was outside the generally accepted standards of decency and morality.

57. Defendant intended to cause emotional distress or acted with reckless disregard of the probability of causing emotional distress.

58. As a result of Defendants' conduct, Plaintiff has suffered damages to include lost wages, emotional harm, punitive damages and other such relief as determined at trial.

## FIFTH CAUSE OF ACTION
(Sexual Discrimination/Harassment – WYO. STAT. §§ 27-9-101 through 105)

59. The preceding paragraphs are incorporated herein by reference.

60. At all times relevant hereto Defendant was Blackburn's employer under WYO. STAT. §§ 27-9-105 and was otherwise qualified for the work he was performing for Defendant.

61. Blackburn was subject to unwelcome and unwanted sexual conduct because of his gender, as more fully set forth above by his employer and its employees.

62. The sexual discrimination and harassment were sufficiently severe and/or pervasive to alter the terms and conditions of his employment, creating a hostile work environment.

63. The hostile work environment was the result of Defendant's negligent hiring, training, supervision and retention of McConnell and his intentional conduct towards Blackburn which management-level employees knew of, or should have known of, and failed to stop.

64. Because McConnell was Plaintiff's supervisor, Schlumberger is liable pursuant to the doctrine of respondeat superior.

65. Additionally, Defendant is liable due to its own negligence in allowing the harassment and discrimination of Blackburn that it knew of or should have known of and failing to stop it.

66. As a direct and proximate result of Schlumberger's conduct, Blackburn suffered special and general damages, including damages for pain and suffering, humiliation and emotional

distress and other compensatory damages, and lost wages, benefits and other prerequisites of employment during his employment, in an amount to be proved at trial.

67. Defendant Schlumberger committed its unlawful discriminatory acts, errors, omissions as enumerated hereinabove in a manner it knew or reasonably should have known created a high probability of serious damages and harm to Plaintiff. Because Defendant's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Blackburn's protected rights, entitling him to an award of punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment and relief against Defendant as follows:

1. For judgment in Plaintiff's favor against Defendant for all causes of action asserted in the Complaint;

2. For an award of all compensation, including back pay and lost employee benefits, front pay and future lost wages and benefit not paid or otherwise lost during and after Plaintiff's employment with Defendant;

3. For an award of compensatory damages in an amount to be determined by proof at trial, including damages for emotional distress, pain, suffering, humiliation and loss of enjoyment and quality of life resulting from the harassment Plaintiff experienced during his employment with Defendant;

4. For an aware of punitive damages in an amount to be determined by proof at trial;

5. For an award of reasonable attorney's fees and costs incurred in bringing this lawsuit, as allowed under applicable law;

6. For an award of pre-judgment and post-judgment interest as allowed by law; and

7. For such other and further relief as the Court deems just and equitable.

10

DATED this 3RD day of June, 2020.

                                       Jeremy J. Hugus, #7-4630
                                       PLATTE RIVER INJURY LAW
                                       259 S. Center Street, #308
                                       Casper, Wyoming 82601
                                       P: (307) 215-9724
                                       F: (844) 416-9337
                                       E: hugus@platteriverlaw.com


                                       /S/ Andrew Stavros
                                       Andrew W. Stavros (Utah Bar # 8615)
                                       STAVROS LAW P.C.
                                       8915 South 700 East, Suite 202
                                       Sandy, Utah 84070
                                       P: (801) 758-7604
                                       F: (801) 893-3573
                                       Email: andy@stavroslaw.com